## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

TIMOTHY E. PERRY,

                Plaintiff,

v.

TOYOTA MOTOR CREDIT CORPORATION
DBA TOYOTA FINANCIAL SERVICES,
SERVE: CT Corporation System, Registered Agent
       4701 Cox Road, Suite 285
       Glen Allen, VA 23060

and

TRANS UNION, LLC
SERVE: Corporation Service Company
       100 Shockoe Slip
       Richmond, VA 23219


EXPERIAN INFORMATION SOLUTIONS, INC.,
SERVE: David N. Anthony, Registered Agent
       1001 Haxall Point
       Richmond, VA 23219

and

EQUIFAX INFORMATION SERVICES, LLC
SERVE: Corporation Service Company
       100 Shockoe Slip
       Richmond, VA 23219


                Defendants.


## COMPLAINT

Plaintiff, TIMOTHY E. PERRY (hereafter "Plaintiff" or "Mr. Perry"), by counsel, and for his Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. §§ 1681 *et seq.* (Federal Fair Credit Reporting Act or "FCRA").

## JURISDICTION

2. The jurisdiction of this Court is conferred by the FRCA, 15 U.S.C. § 1681(p) and 28 U.S.C. §1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as Plaintiff resides in this District and Division and a significant part of the Plaintiff's claims occurred in Virginia.

## PARTIES

4. The Plaintiff, TIMOTHY E. PERRY, is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

5. Upon information and belief, TOYOTA MOTOR CREDIT CORPORATION d/b/a TOYOTA FINANCIAL SERVICES ("Toyota") is a foreign limited liability company doing business as a loan originator and servicer for automobile loans. At all relevant times hereto, Toyota was a furnisher of credit information as governed by the FRCA.

6. Upon information and belief, EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

7. Upon information and belief, Experian is a "consumer reporting agency," as defined by 15 U.S.C. § 1681(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

2

consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

8. Upon information and belief, Experian disburses such consumer reports to third parties under contract for monetary compensation.

9. Upon information and belief, TRANS UNION, LLC. ("Trans Union") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

10. Upon information and belief, Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. §1681(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

11. Upon information and belief, Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

12. Upon information and belief, EQUIFAX INFORMATION SYSTEMS, LLC. ("Equifax") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

13. Upon information and belief, Equifax is a "consumer reporting agency," as defined in 15 U.S.C. §1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

14. Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

15. Mr. Perry entered into a lease for a vehicle with Toyota on February 20, 2016.

16.     Mr. Perry filed Chapter 7 bankruptcy on March 25, 2016.  The lease was included in the Chapter 7 Bankruptcy and Toyota was properly noticed of that fact.

17.     On March 29, 2016, Toyota sent bankruptcy counsel a letter concerning Mr. Perry's account.  In the letter, Toyota acknowledges the petition for bankruptcy.  The letter goes on to state: "Please advise your client that the billing statements will not be resumed on or after discharge of the bankruptcy."  The letter then offers an assumption of the lease, indicates that Toyota will not report payment history to the "three major credit reporting agencies unless a Lease Assumption Agreement has been completed and sent to us in accordance with Section 365 of the Bankruptcy Code."  The letter goes on to state: "Until the lease is assumed and the case itself closes, we will not resume sending billing statements.  In the interim, strictly voluntary payments in the amount of $265.45, may continue. . . ."

18.     Mr. Perry entered into a voluntary lease assumption with Toyota on April 20, 2016.  However, Mr. Perry was unable to continue to make payments on the vehicle and, in January of 2017, he contacted Toyota to attempt to make arrangements to surrender the vehicle.  Mr. Perry was current on his lease payments as of January of 2017 but made no further payments.

19.     When attempting to make arrangements to surrender the vehicle to Toyota in January of 2017, Mr. Perry was informed by an employee of Toyota that Toyota had

no record of his bankruptcy and that he would be responsible for the balance of the lease on the vehicle and additional charges.  This employee told Mr. Perry to take the vehicle Toyota Motor Company in Bristol, Virginia and to call Toyota back to let them know with whom he left the vehicle and keys.

20.     Mr. Perry decided to call Toyota back and make other arrangements and request that they pick up the vehicle at his residence.  The employee he spoke to on this occasion indicated that Toyota would pick up the vehicle at his residence.  This employee did acknowledge that Toyota had record of him filing bankruptcy, and he further explained to Mr. Perry that this is a voluntary surrender and that he would not be responsible for the balance on the lease.

21.     Mr. Perry waited until March 13, 2017 and Toyota still had not picked up the vehicle from his residence.  He contacted Toyota to ask them why they were still sending billing statements to him and why they had not picked up the vehicle.  A third employee, "Chelsea" told Mr. Perry once again that Toyota had no record of him filing bankruptcy but that he had signed an assumption of the lease and was still responsible for paying the debt.  Mr. Perry was passed off to several other employees with Toyota's Bankruptcy/Fraud Division and was told again that he was responsible for paying the lease.

22.     By letter dated March 23, 2017, bankruptcy counsel for Mr. Perry sent a letter to Toyota informing them that there had been no reaffirmation agreement, that the bankruptcy court had granted a discharge of Mr. Perry's debts on June 21, 2016.  Counsel further advised Toyota to make arrangements to repossess the vehicle and gave the vehicle location and Mr. Perry's phone number.  Attached to this letter were copies of

documentation showing that the lease had been included in bankruptcy, certificates of notice of service, and the order of discharge from the bankruptcy court.

23.     The order of discharge states "This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c) (f)."

24.     Toyota never approached the Bankruptcy Court about reaffirmation of the lease and did not obtain Court approval as required by the Bankruptcy Code, 15 U.S.C. §524.  Therefore, when the Bankruptcy Court entered its order of discharge on June 21, 2016, it still included the amounts due pursuant to the lease.  In other words, Mr. Perry's personal liability for the lease terminated on June 21, 2016 and the assumption of the lease on April 20, 2016 was ineffective to reinstate personal liability without obtaining approval from the Bankruptcy Court and otherwise utilizing the procedure in 15 U.S.C. § 524.

25.     Mr. Perry continued to receive billing statements from Toyota.

26.     On or about June 9, 2017, Toyota sent an acknowledgment of repossession and notice of auction of the vehicle.  The vehicle was subsequently sold at auction.

27.     On or around June 16, 2017, Mr. Perry obtained a copy of his credit report with Experian, Equifax and Trans Union and learned that each credit bureau was inaccurately reporting the account as due and owing, with a past due balance, and without any reference to the fact that the account was included in Chapter 7 Bankruptcy.

28.     On or about July 24, 2017, Mr. Perry sent a detailed letter each to Experian, Equifax and Trans Union disputing the inaccurate derogatory reporting of the Toyota lease.  Mr. Perry's dispute letters were detailed and provided the case number and

details of his bankruptcy case; clearly advised each credit bureau that there was no reaffirmation ever filed with the bankruptcy court; and that the account should be reported with a zero balance because the debt had been discharged in his bankruptcy case. In each of these disputes, and in subsequent disputes, Mr. Perry copied Toyota Financial Services with his correspondence to the Credit Bureaus.

29.     Upon information and belief, Experian, Equifax and Trans Union, despite Mr. Perry's multiple disputes, prepared and published to third parties multiple inaccurate consumer reports about Mr. Perry, which contained inaccurate derogatory information regarding his Toyota account.

30.     Each of the CRAs as well as Toyota obtain bankruptcy information from third-party vendors and not directly from bankruptcy courts, yet they do not disclose the actual source of the bankruptcy information.

31.     Each of the CRAs as well as Toyota are on not in possession of the bankruptcy records that they use to make reports about consumers who have filed a bankruptcy, but instead rely on information obtained from third-party vendors.

32.     The CRAs as well as Toyota have been on notice from prior litigation as well as their own internal quality control mechanisms that they frequently report inaccurate information concerning consumer bankruptcies. Yet, they report them without checking with, or obtaining records from, the bankruptcy courts even when conducting a reinvestigation initiated due to a consumer dispute.

### Dispute Results and Further Disputes with Equifax

33.     Equifax responded to the July 24, 2017 letter dispute on August 3, 2017 and indicated that the account would be updated to show that it was included in

bankruptcy.  The dispute response also showed a blank space in the spot underneath the heading "Balance Amount" and otherwise did not show a balance or a past-due amount.

34.    Inexplicably, despite its indication that the account would be updated, Equifax continued to report the account inaccurately.   Mr. Perry obtained his Equifax credit report again on October 17, 2017 and this report indicated that the "Balance Amount" was $6,149 and that "Amount Past Due" was "$6,149.   The report further indicated that this amount was charged off and that there was a reaffirmation of the debt.

35.    Mr. Perry, on or about November 1, 2017, sent a second letter dispute to Equifax informing them that they were still reporting the account inaccurately and the reasons why.  In addition, Mr. Perry included a docket sheet for his bankruptcy case indicating that he had received a discharge.  The docket sheet also provides the entirety of the docket entries that show that Mr. Perry did not reaffirm the debt to Toyota.

36.    Upon information and belief, Equifax either did not respond to this letter dispute or Mr. Perry did not receive the response.

37.    Mr. Perry once again obtained his Equifax credit report on January 5, 2018.  This report was reporting almost identically to the previous credit report except now the balance was increased to $6,278.

38.    On February 5, 2018, Mr. Perry sent a third letter dispute informing Equifax of the same inaccuracies as before.

39.    Equifax responded on February 21, 2018 indicating that they "verified that this item belongs to you.  This account has been updated.  Additional information has been provided from the original source regarding this item."  The dispute response still shows a balance due, a reaffirmation of the debt, and that the account is past due.

40.     Upon information and belief, Equifax is still reporting and disseminating this inaccurate and derogatory information.

**Dispute Results and Further Disputes with Experian**

41.     In regard to Mr. Perry's initial dispute on July 24, 2017, upon information and belief, Experian either did not respond to the dispute or Mr. Perry did not receive the response.

42.     On August 10, 2017, Mr. Perry ran his Experian credit report and it was still reporting inaccurately by showing a balance due of $6,149 and that the balance was past due.  It also inaccurately reported that there was an "Involuntary Repossession" and indicated "This item was updated from our processing of your dispute in Aug 2017."

43.     On August 28, 2017, Mr. Perry sent a second dispute letter to Experian and provided a copy of the docket sheet for his bankruptcy case showing a discharge and no reaffirmation of the debt to Toyota.

44.     Experian responded by letter dated September 20, 2017 as follows:  "We are responding to your comment about debts discharged through bankruptcy.  We can update your personal credit report if you either write to us listing the items included in the bankruptcy or send us a copy of your bankruptcy schedule and a court document showing the chapter and filing date and discharge date of the bankruptcy.  Enclose one copy of the below information along with your bankruptcy schedule:  [Copy of your ID and Utility Bill, bank or insurance statement]."

45.     Experian sent a second response dated September 22, 2017 indicating that the reinvestigation of the dispute was now complete and that the report had been updated. However, in the report provided in their response, Experian continued to report the

Toyota account inaccurately.  While the reference to an involuntary surrender was removed from the report, it still showed a past due balance and made no reference to the account being included in bankruptcy.

46.    Mr. Perry again ran his Experian credit report on October 17, 2017 and discovered the same inaccuracies as before, showing a past due balance and no reference to the fact that the account was included in bankruptcy.

47.    Mr. Perry sent yet another dispute to Experian by letter dated November 1, 2017.  Mr. Perry once again included the docket sheet from his bankruptcy case showing a discharge of his debts and the lack of any reaffirmation agreement between him and Toyota.

48.    On November 18, 2017, Equifax once again responded by letter indicating, with identical language as in their September 20, 2017 response, that Mr. Perry needed to provide them with the items included in bankruptcy or provide a copy of the bankruptcy schedule.

49.    An additional response was sent by Experian on November 18, 2017 indicating that the dispute is now complete.  The "Outcome" as indicated in this letter is that "[t]he item you disputed has been updated, which may include an update to the disputed information."

50.    The report provided with this response still showed that the account was past due and did not mention bankruptcy.  The only item that appears to be updated is that the account balance increased from $6,149 to $6,278.

51.    Mr. Perry sent a fourth dispute letter to Experian based upon the still inaccurate reporting of the account on the credit report (dated November 18, 2017) they

provided in response to his third dispute.  In this dispute letter, Mr. Perry attached a Case Summary sheet from his bankruptcy case showing a discharge date of 06/21/2016.   Mr. Perry also attached "Schedule G: Executory Contracts and Unexpired Leases" which clearly shows that the lease was included in his bankruptcy case.

52.    On February 23, 2018, Experian responded that the reinvestigation was complete and that the account had once again been updated.

53.    The report included with their letter response still shows a past due balance and makes no reference to the account being included in bankruptcy.

54.    Upon information and belief, Experian is still reporting and disseminating this inaccurate and derogatory information.

**Dispute Results and Further Disputes with Trans Union**

55.    Trans Union responded to Mr. Perry's dispute dated July 24, 2017 by letter dated August 2, 2017 and indicated that its investigation was complete.  The "Investigation Results Summary" indicates "DISPUTED INFORMATION UPDATED." The report was in fact updated to show a zero balance, that the account was included in bankruptcy and otherwise removed any reference to the account being past due and removed the remark that appeared on the previous report "REAFFIRMATION OF DEBT."

56.    Mr. Perry received a copy of his Trans Union credit report on January 5, 2018.  Inexplicably, despite the assertion that Trans Union had updated the information and had provided an accurate report in response to Mr. Perry's July 24, 2017 dispute, the account had returned to its original reporting, i.e., as past due, reaffirmed debt, and makes no reference to the account being included in bankruptcy.

57.    Mr. Perry sent a second dispute letter to Trans Union on February 5, 2018.

58.    Trans Union responded by letter dated February 23, 2018 that their investigation was complete.  The "Investigation Results Summary" indicates that the account was "VERIFIED AS ACCURATE AND UPDATED."

59.    The report of the account attached to this letter shows a past due balance of $6,278, shows "REAFFIRMATION OF DEBT" and makes no reference to the account being included in bankruptcy.

60.    However, on a Trans Union credit report obtained May 8, 2018, the account does reference "CH 7" but again states "REAFFIRMATION OF DEBT" and continues to report a past due balance.

61.    Upon information and belief, Trans Union continues to report and disseminate this inaccurate and derogatory information.

**Dispute Responses from Toyota**

62.    By letter dated August 11, 2017, Toyota indicated to Mr. Perry; "You recently contacted us regarding what you believe is incorrect or incomplete information on your credit report with one or more of the credit reporting agencies listed below.  We have researched our records and have determined that the information reflected in our records is correct and we are reporting your account to the credit reporting agencies in a manner that is consistent with our records."

63.    Toyota sent a second letter to Mr. Perry, also dated August 11, 2017.  This letter specifically referenced his July 24, 2017 letter dispute.  The letter went on to state that "Our records reflect that you submitted the same dispute to us one or more times in the past and Toyota Financial Services ("TFS") previously fully investigated and

responded to your concerns."  This letter went on to indicate that Toyota was reporting the account correctly but that they will update the account to show that Mr. Perry disputed the account.

64.     By letter dated September 19, 2017, Toyota responded to the dispute letter he sent to Experian on August 28, 2017.  This letter is identical in all material aspects to the second August 11, 2017 letter and states that Toyota has already verified the account as correct and that they have not been provided additional circumstances or information to investigate.

65.     However, the dispute letter sent by Mr. Perry on August 28, 2017 did provide additional information.  As referenced above, the August 28, 2017 letter had the bankruptcy case docket sheet attached to it for Experian and Toyota's review.

66.     By letter dated December 6, 2017, presumably in response to Mr. Perry's November 1, 2017 dispute letters, Toyota once again indicated to Mr. Perry that they were reporting the account accurately.  Interestingly, on this letter, there is a hand stamped phrase: "This is Not an Attempt to Collect a Debt.  For Informational Purposes Only."

### Communications From Alltran Financial, LP

67.     At some point, in direct violation of the discharge injunction created by the Bankruptcy Code, Toyota engaged a debt collector, Alltran Financial, LP (Alltran"), to collect upon the alleged debt.  On December 11, 2017, Alltran sent a dunning letter requesting that Mr. Perry pay the account in full, "payable to our client" (Toyota).  The letter went on to provide the notice to Mr. Perry of his right to dispute the validity of the debt pursuant to the FDCPA, 15 U.S.C. §1692 et seq.

68.     By letter dated January 3, 2018, Mr. Perry wrote a letter to Alltran, addressed to the name of the employee of Alltran whose name appears on the collection letter, Sierra D. Burleigh.  The letter references the account number for Toyota and an Alltran ID, and states that "I, Timothy E. Perry dispute this debt.  This debt was included in my Chapter 7 Bankruptcy.  Court Case #16-70388 and was filed March 25, 2016, in the Western District of Virginia."  The letter then provided contact information for the clerk of the bankruptcy court.  Prior to the signature line, Mr. Perry states "Please, do not contact me again!"

69.     To date, Alltran has not made any further attempts to collect this debt.

70.     Toyota engaged a debt collector despite their hand stamped acknowledgment in their letter that they should not be attempting to collect this debt.

## Credit Denials and Other Injuries

71.     Mr. Perry has been denied credit on multiple occasions due to the inaccurate reporting of the Toyota account.  On or about October 11, 2017, Mr. Perry was denied a personal loan from Wells Fargo and was denied a line of credit at Home Depot. Mr. Perry was requesting credit in order to make necessary repairs to his mobile home.

72.     Mr. Perry was again denied a line of credit by Regions Bank on or about April 13, 2018.

73.     Due to the stress created by the CRAs and Toyota's refusal to correct the inaccurate reporting after many disputes, the deception that the disputes were being resolved, to be followed by discovery that the derogatory and inaccurate reporting continues, Mr. Perry has suffered physical injuries and incurred medical bills that he has no ability to pay.

14

74.     Mr. Perry also suffered physical injury, mental and emotional distress as a result of being unable to obtain financing to make necessary repairs to his home due to the CRAs and Toyota's inaccurate and derogatory reporting.

75.     Mr. Perry was forced into filing bankruptcy in the first place due to medical bills.  He is now incurring additional medical bills because he has been denied the fresh start that is intended by the Bankruptcy Code because Toyota insists that he still owes a discharged debt, and insists on continuing to report the past due balance to the CRAs.   What is more, the CRAs, despite receiving adequate documentation from Mr. Perry to correct the inaccuracies, have either refused to do so all along, or in the case of Trans Union, initially made the corrections but then returned to the erroneous reporting of the account.

76.     In addition, Mr. Perry has spent significant time and incurred significant expenses in numerous certified mailings to the CRAs, Toyota and Toyota's debt collector, he has incurred lost time and lost wages as a result.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (EXPERIAN, EQUIFAX and TRANS UNION)

77.     Mr. Perry realleges and incorporates all other factual allegations set forth in the Complaint.

78.     Experian, Equifax and Trans Union (collectively Credit Reporting Agencies or "CRAs") each violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

79.     As a result of each of the CRAs' violations of 15 U.S.C. §1681e(b), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other physical injury as a result of mental and emotional distress.

80.     The violations by the CRAs were willful, rendering each of the CRAs individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRAs were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

81.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from each of the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i(a)(1)
## (EXPERIAN, EQUIFAX and TRANS UNION)

82.     Mr. Perry realleges and incorporates all other factual allegations set forth in the Complaint.

83.     The CRAs violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from Mr. Perry's credit files.

84.     As a result of CRAs' violations of 15 U.S.C. §1681i(a)(1), Mr. Perry suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

85.     The violations by the CRAs were willful, rendering each of the CRAs individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRAs were negligent, which entitles Mr. Perry to recovery under 15 U.S.C. §1681o.

86.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from each of the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i(a)(4)
## (EXPERIAN, EQUIFAX and TRANS UNION)

87.     Mr. Perry realleges and incorporates all other factual allegations set forth in the Complaint.

88.     The CRAs violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information submitted by the Plaintiff.

89.     As a result of CRAs' violations of 15 U.S.C. §1681i(a)(4), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

90.     The violations by the CRAs were willful, rendering each of the CRAs individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRAs were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

91.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from each of the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i(a)(5)(A)
## (EXPERIAN, EQUIFAX and TRANSUNION)

92.     Mr. Perry realleges and incorporates all other factual allegations set forth in the Complaint.

93.     The CRAs violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

94.     As a result of CRAs' violations of 15 U.S.C. §1681i(a)(5)(A), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

95.     The violations by the CRAs were willful, rendering each of the CRAs individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRAs were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

96.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from each of the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)(1)(A)
## (TOYOTA)

97.     Mr. Perry realleges and incorporates all other factual allegations set forth in the Complaint.

98.     On at least one occasion within the past two years, by example only and without limitation, Toyota violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's dispute.

99.     When the Plaintiff mailed his disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as Toyota.   It is an automated system and the procedures used by the CRAs are systemic and uniform.

100.   When a CRA receives a consumer dispute, it (usually via an outsource vendor in India), translates that dispute into an "ACDV" form.

101.   The ACDV form is the method by which Toyota has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

102.   It is extremely rare – certainly less than 1% of the time – that Toyota will receive a consumer's dispute sent through the CRAs other than through the e-Oscar system.

103.   On information and belief, Mr. Perry alleges that to date Toyota has never complained to the CRAs about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

104.   If Toyota receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

105.   Based on the manner in which the CRAs responded to Mr. Perry's disputes, representing that Toyota had "verified" the supposed accuracy of its reporting,

Plaintiff alleges that Experian, Equifax and Trans Union did in fact forward the Plaintiff's dispute via an ACDV to Toyota.

106.   Toyota understood the nature of the Plaintiff's dispute when it received the ACDVs from Experian, Equifax and Trans Union.

107.   When Toyota received the ACDVs from Experian, Equifax, and Trans Union, it as well could have reviewed its own system and previous communications with Mr. Perry and his attorney and discovered that Mr. Perry was no longer personally liable for the debt because it had been discharged in bankruptcy.

108.   Notwithstanding the above, Toyota follows a standard and systemically unlawful process when it receives the ACDV dispute.  Basically, all Toyota does is review its own internal computer screen for the account and repeat back to the ACDV system the same information Toyota already had reported to the CRAs.

109.   When Toyota receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

110.   As a result of Toyota's violations of 15 U.S.C. §1681s-2(b)(1)(A), Mr. Perry suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

111.   The violations by Toyota were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Toyota was negligent, which entitles Mr. Perry to recovery under 15 U.S.C. §1681o.

112.   The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

113.   Toyota was aware of the Johnson v. MBNA FCRA decision by the Fourth Circuit (357 F.3d 426) when it followed the ACDV procedures used regarding the Plaintiff's dispute.

114.   Toyota has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

115.   On information and belief, Mr. Perry alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Toyota intended its employees or agents to follow.

116.   On information and belief, the Plaintiff alleges that Toyota's employee or agent did not make a mistake (in the way in which he or she followed Toyota's procedures) when he or she received, processed and responded to the Experian, Equifax, and Trans Union's ACDVs.

117.   On information and belief, the Plaintiff alleges that Toyota has not materially changed its FCRA investigation procedures after learning of its failures in this case.

118.   Mr. Perry is entitled to recover actual damages, statutory damages, costs and attorney's fees from Toyota in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
15 U.S.C. § 1681s-2(b)(1)(B)
(TOYOTA)**

119.   Mr. Perry realleges and incorporates all other factual allegations set forth in the Complaint.

120.   On one or more occasions within the past two years, by example only and without limitation, Toyota violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

121.   As Plaintiff detailed in Count Five, Toyota has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

122.   Toyota is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

123.    Toyota does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

124.   Toyota understood that Mr. Perry's disputes stated that he had included the lease in bankruptcy and that the debt had been discharged.

125.   Nevertheless, Toyota ignored such information and instead simply regurgitated the same identifying information it had previously reported to the CRAs.

126.   As a result of Toyota's violations of 15 U.S.C. §1681s-2(b)(1)(B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

127.   The violations by Toyota were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Toyota was negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

128.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Toyota in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for his attorneys' fees and costs; for post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,
Timothy E. Perry

By Counsel:

/s/Leonard A. Bennett, VSB#37523
/s/Susan M. Rotkis, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

/s/Brandon Snodgrass, Esq. VSB #47894
/s/Matthew Felty, Esq. VSB #74873
SNODGRASS & FELTY, P.C.
P. O. Box 1417
Abingdon, VA 24212
(276) 676-2660 – Telephone
(276) 676-2667 – Facsimile
Email: bsnodgrass@snodgrasslawfirm.com
Email: mfelty@snodgrasslawfirm.com

*Counsel for Plaintiffs*