## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **TIMOTHY E. PERRY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00034 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **TOYOTA MOTOR CREDIT** | ) | By: James P. Jones |
| **CORPORATION DBA TOYOTA** | ) | United States District Judge |
| **FINANCIAL SERVICES, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Matthew Felty and Brandon Snodgrass, Snodgrass & Felty, P.C., Abingdon, Virginia, and Leonard A. Bennett and Susan M. Rotkis, Consumer Litigation Associates, P.C., Newport News, Virginia, for Plaintiff; Ryan J. Munitz and Anna S. McLean, Sheppard Mullin Richter & Hampton LLP, Washington, D.C., and San Francisco, California, for Defendant Toyota Motor Credit Corporation; David N. Anthony, Troutman Sanders LLP, Richmond, Virginia, for Defendant Experian Information Solutions, Inc.*

In this action under the Fair Credit Reporting Act ("FCRA"), plaintiff Timothy Perry alleges that defendants Toyota Motor Credit Corporation ("Toyota"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union") violated the FCRA by furnishing and reporting his Toyota vehicle lease account as due and owing, with a past-due balance, and without reference to its inclusion in his bankruptcy. He also alleges that Toyota, Equifax, and Trans Union violated the FCRA by furnishing and reporting his Toyota account as reaffirmed. Defendants

Toyota and Experian have moved to dismiss the Complaint, asserting that they did not violate the FCRA because they furnished and reported Perry's Toyota account accurately. For the reasons that follow, I will grant Experian's motion, and I will grant in part and deny in part Toyota's motion. I find that at this point, Perry has stated a plausible claim when he alleges that Toyota falsely reported that he had "reaffirmed" his vehicle lease, rather than that he had "assumed" it.

## I.

The Complaint alleges the following facts, which I must accept as true for the purpose of deciding the Motion to Dismiss.

Perry began leasing a vehicle from Toyota[1] on February 20, 2016. On March 25, 2016, Perry filed a petition for Chapter 7 bankruptcy, and the Toyota lease was included in the petition. Toyota was notified of this, and on March 29, 2016, Toyota sent Perry's bankruptcy counsel a letter regarding the vehicle lease. In the letter, Toyota stated that it would no longer send billing statements to Perry and would not report his account payment history to the three major credit reporting agencies ("CRAs") "unless a Lease Assumption Agreement has been completed and sent to [Toyota] in accordance with Section 365 of the Bankruptcy

---

[1] Perry alleges that he entered into the lease with Toyota Motor Credit Corporation. However, the lease was initially between Perry and Toyota of Bristol. The lease was then assigned to Toyota Lease Trust and serviced by Toyota Motor Credit Corporation. Solely for the purposes of its Motion to Dismiss, Toyota Motor Credit Corporation accepts as true the allegation that Perry's lease was with it.

Code." Compl. ¶ 17, ECF No. 1. On April 20, 2016, Perry voluntarily assumed the vehicle lease.

On June 21, 2016, the bankruptcy court granted a discharge of Perry's debts. The order of discharge stated, "This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c) (f)." Compl. ¶ 23, ECF No. 1.

Perry continued to receive billing statements from Toyota after the bankruptcy court's order of discharge, and he paid these bills through January 2017. In January 2017, Perry contacted Toyota to make arrangements to surrender the vehicle because he was no longer able to make payments on the lease. Between January and June 2017, Perry and Toyota corresponded regarding arrangements for Toyota to repossess the vehicle, and Toyota did so on or about June 9, 2017. Toyota continued to send billing statements during this time, and its employees told Perry that he had signed an assumption of the lease and was still responsible for paying the debt.[2] Perry did not make any payments after January 2017.

On or around June 16, 2017, Perry obtained a copy of his credit report from Experian, Equifax, and Trans Union and learned that each CRA was reporting his account with Toyota as due and owing, with a past-due balance, and without

---

[2] I assume that the debt referred to arises from the post-petition assumption of the lease, i.e., the monthly payments and any early termination fee.

reference to the account's inclusion in the bankruptcy. In July 2017, Perry sent a letter to each CRA disputing their reporting of the Toyota account, and he copied Toyota on this and subsequent correspondence with the CRAs.

Equifax responded to Perry's letter and stated that the account would be updated to show that it was included in the bankruptcy discharge. However, Perry obtained his Equifax credit report on October 17, 2017, and it showed the Toyota account as due and owing, with a past-due balance. It also indicated that the debt had been reaffirmed. Perry sent a second dispute letter to Equifax in November 2017, but when he obtained another credit report from Equifax in January 2018, it was identical to the previous report. Perry sent a third dispute letter to Equifax in February 2018, and Equifax responded stating that it had verified the account. Equifax's dispute response still showed a past-due balance and that the debt had been reaffirmed. Equifax is still reporting this allegedly inaccurate information.

Perry did not receive a response to his first dispute letter from Experian, and when he obtained his Experian credit report again in August 2017, it showed that his Toyota account had a past-due balance and that the vehicle had been involuntarily repossessed. Perry then sent a second dispute letter to Experian, to which Experian responded stating that it had reinvestigated the dispute and updated the report. In the report included with this response, the reference to involuntary repossession had been removed, but it still showed a past-due balance and made no

reference to the account being included in bankruptcy. Between October and November 2017, Perry sent two additional dispute letters to Experian, and he received similar responses from it. Experian is still reporting this allegedly inaccurate information.

Trans Union responded to Perry's first dispute letter and stated that its investigation of the dispute was complete and the information had been updated. His Trans Union credit report showed no balance on the Toyota account and that the account was included in the bankruptcy discharge. It also removed the reference to a reaffirmation of the debt. Perry obtained another copy of his Trans Union credit report in January 2018, and this report again showed that the Toyota account was past due, the debt had been reaffirmed, and no reference to the account being included in bankruptcy. Perry sent Trans Union another dispute letter, and Trans Union responded stating that its investigation indicated that the account was verified as accurate. The enclosed report showed the same information as the prior report. Trans Union is still reporting this allegedly inaccurate information.

In Toyota's response to Perry's first dispute letter, it stated that it had researched its records and determined that the information it was furnishing to the CRAs was correct. A second letter from Toyota stated that it would update the account to show that Perry had disputed it. Toyota sent similar letters to Perry in

response to the additional dispute letters it had been copied on. Toyota is still furnishing this allegedly inaccurate information.

Perry alleges that Experian, Equifax, and Trans Union had forwarded his dispute to Toyota, but when Toyota received information about the dispute, it only reviewed its internal system and ultimately furnished the same information back to the CRAs. Perry alleges that Toyota did not review its previous communications with him when investigating the dispute.

In December 2017, Perry received a letter from Alltran Financial LP ("Alltran"), a debt collector, requesting that he pay the debt on the Toyota account in full. Perry responded to this letter and disputed the debt, stating that it was included in the bankruptcy discharge. Alltran has not made additional attempts to collect the debt.

Perry asserts that he has been denied credit on multiple occasions because of the reporting of the Toyota account. He also alleges that the stress from the disputes and being unable to obtain credit has caused physical injuries, mental and emotional distress, and medical bills that he cannot pay. Additionally, he states that he has incurred lost time and wages disputing the account reporting.

Perry's Complaint alleges that Experian, Equifax, and Trans Union violated the FCRA's requirement that they ensure the accuracy of the information they report and reinvestigate disputed information. In particular, it is alleged that they

reported his lease account with Toyota as due and owing, with a past-due balance, and without reference to its inclusion in his bankruptcy. In addition, it is alleged that Equifax and Trans Union reported the account as reaffirmed. The Complaint also alleges that Toyota violated the FCRA's requirement that it investigate disputed information when it continued to furnish this information about his account. Defendants Experian and Toyota moved to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The Motions to Dismiss have been fully briefed and are now ripe for decision.[3]

## II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In order to survive a motion to dismiss, the plaintiff must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-

---

[3] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

pled facts. *Id.* A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## A.

Perry's claims against the three CRAs allege that they violated FCRA §§ 1681e(b) and 1681i, which set out the duties of CRAs to ensure the accuracy of information in the reports they prepare and to reinvestigate information that is disputed as inaccurate. In particular, Perry alleges that they violated these sections when they inaccurately reported his Toyota account as due and owing, with a past-due balance, and without reference to the account being included in bankruptcy.[4] Perry asserts that this reporting is inaccurate because his April 2016 lease assumption agreement with Toyota was included in his June 2016 bankruptcy discharge, and thus he was not liable for the debt after June 2016. In its Motion to Dismiss, Experian argues that Perry fails to state a claim upon which relief can be granted because its reporting of the Toyota account was not inaccurate. Experian asserts that its reporting was accurate because the lease assumption agreement survived the bankruptcy discharge. Experian further argues that even if the law is

---

[4] Perry also claims that Equifax and Trans Union violated the statute when they reported the Toyota account as reaffirmed. However, I do not address this claim here because Equifax and Trans Union have not asserted motions to dismiss.

not clear on this issue, Perry's claim fails because the FCRA does not require CRAs to resolve such legal disputes.

Congress enacted the FCRA to, among other things, ensure fair and accurate credit reporting. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To this end, the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A CRA violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). A report contains inaccurate information when the information is patently incorrect or when it is "'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect." *Id.* (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).

When consumers dispute the accuracy of information in their files, FCRA § 1681i requires CRAs to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). As under § 1681e(b), a consumer alleging a violation of § 1681i "must first show that his 'credit file contains inaccurate or incomplete information.'" *Hinton v. Trans*

*Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009) (quoting *Thomas v. Trans Union LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002)); *see also Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008) (finding that the plaintiff "has made the prima facie showing of inaccuracy required by sections 1681e and 1681i"). Although § 1681i does not on its face require that an inaccuracy exist, "[t]he inaccuracy requirement comports with the purpose of the FCRA, which is 'to protect consumers from the transmission of inaccurate information about them.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1167 (9th Cir. 2009)).

The parties' dispute as to whether there are inaccuracies in the reporting of Perry's Toyota account stems from their disagreement over whether his lease assumption agreement, made pursuant to Bankruptcy Code § 365(p), was included in his subsequent bankruptcy discharge. Perry contends that the assumption agreement was included in the discharge because it would have survived the discharge only if he had reaffirmed the debt pursuant to Bankruptcy Code § 524(c), which he did not do. Thus, Perry argues that he was not liable for the debt after the June 2016 discharge, and to report the account as due and owing, with a past-due balance is inaccurate. However, Experian argues that reaffirmation is not required for an assumed lease to survive a bankruptcy discharge, and thus Perry continued to be personally liable for the debt he assumed.

A bankruptcy discharge generally relieves a debtor of his or her pre-petition debts. *Williams v. Ford Motor Credit Co.*, Case No. 15-cv-14201, 2016 WL 2731191, at *1 (E.D. Mich. May 11, 2016). However, § 524(c) establishes a framework under which a debtor may agree to remain personally liable for a debt even after a discharge. *Bobka v. Toyota Motor Credit Corp.*, 586 B.R. 470, 476 (S.D. Cal. 2018). These "reaffirmation" agreements are contrary to bankruptcy's goal of giving debtors a fresh start, so the Bankruptcy Code subjects them to a number of requirements, including strict judicial scrutiny. *Id.* Prior to 2005, a bankruptcy trustee could assume a lease pursuant to § 365 such that the estate adopted the debtor's obligations under the lease. *In re Creighton*, 427 B.R. 24, 26 (D. Mass. 2007). The 2005 Bankruptcy Abuse Prevention and Consumer Act added § 365(p), which allows a debtor to assume a lease of personal property even if a trustee does not do so. *Bobka*, 586 B.R. at 475. Section 365(p) does not require judicial review of a lease assumption agreement. *Id.* at 476.

Bankruptcy and district courts have struggled with the question of whether a § 365(p) lease assumption agreement remains enforceable following a discharge even if the agreement was not reaffirmed under § 524(c). *Id.* As Perry notes, courts are split on this issue, and the parties each cite cases supporting their positions. Here, however, I need not weigh in on the issue. As discussed in greater detail below, Perry's contention that the reporting is inaccurate because he

11

is not liable for the assumption agreement presents a legal defense to the debt rather than a factual inaccuracy in the reporting, and thus he does not state a claim under the FCRA.

A number of courts have found that to make the required showing of inaccurate reporting under FCRA §§ 1681e(b) and 1681i, a "complaint's allegations must dispute *facts* underlying a purported inaccuracy, as the presentation of *legal defenses* to payment will not suffice." *Mamisay v. Experian Info. Sols., Inc.*, Case No. 16-cv-05684-YGR, 2017 WL 1065170, at * 3 (N.D. Cal. Mar. 21, 2017); *see also DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (granting summary judgment in favor of the CRA because the consumer's § 1681i claim "did not state any factual deficiency" and instead attacked his mortgage's validity, which turned "on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the loan"); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) ("[A] section [1681i(a)] claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry."); *cf. Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 150, 142, (4th Cir. 2008) (noting that claims under both §§ 1681e(b) and 1681i "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the

creditor is not a party to the suit"). In requiring a showing of factual inaccuracy, the First Circuit in *DeAndrade* reasoned that CRAs are "neither qualified nor obligated" to resolve legal issues under the FCRA. 523 F.3d at 68.

Here, Perry's claims against Experian do not dispute any facts underlying Experian's allegedly inaccurate reporting of his Toyota account as due and owing, with a past-due balance — Perry admits that he stopped making payments on the debt after January 2017. Rather, his claims present a legal defense to payment — he is not liable for the lease he assumed because he did not reaffirm it, and thus it was included in his bankruptcy discharge. As noted above, courts disagree as to whether this is the case. Moreover, the FCRA is not suited to resolving such an argument. The FCRA aims to prevent inaccurate credit reporting; it is not a route for debtors to challenge the validity of underlying debts. In particular, allowing debtors to bring such claims would hold CRAs to a standard beyond that which currently exists for assessing § 1681i failure to reinvestigate claims — whether the CRA could have discovered an error in a particular report through a reasonable investigation. *Cahlin*, 936 F.2d at 1160. The proper resolution of a legal defense to payment of the debt is not generally the kind of error that a CRA could discover or resolve through a review of information from consumers, furnishers, or its own files. In addition, the Fourth Circuit has expressed concern about collateral attacks on underlying debts via FCRA suits against CRAs. Accordingly, Perry's

contention that Experian inaccurately reported his account as due and owing, with a past-due balance fails to state a claim under FCRA §§ 1681e(b) and 1681i.

However, Perry also argues that even if the lease assumption agreement survived the bankruptcy discharge, Experian's reporting is still inaccurate because it does not reflect that the Toyota account was "included in bankruptcy." Experian counters that its reporting is not inaccurate in this respect because it has no general affirmative duty to report such information, and while the FCRA requires CRAs to report some information about a consumer's bankruptcy, whether the account was included in bankruptcy is not part of this requirement.

Again, Perry's argument fails because it does not allege an inaccuracy sufficient to state a claim under FCRA §§ 1681e(b) and 1681i. The specific meaning Perry intends for the phrase "included in bankruptcy" is unclear. To the extent he asserts that his Experian report is inaccurate because it does not show the Toyota account as included in the bankruptcy discharge, this argument fails for the reasons discussed above. To the extent he asserts that it is inaccurate because it does not show the account as included in the bankruptcy petition, this argument fails because the report is not patently incorrect without this information, nor is it "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415 (internal quotation marks, alterations and citation omitted); *see Harris v. Experian Info. Sols., Inc.*, C/A No. 6:06-cv-1808-

GRA, 2009 WL 10693883, at *5 (D.S.C. June 30, 2009) ("A credit report is not 'inaccurate' simply because it does not include all relevant information about a consumer."). Accordingly, Perry's allegations against Experian fail to state a claim under FCRA §§ 1681e(b) and 1681i.

B.

Perry's claims against Toyota allege that it violated FCRA §1681s-2(b)(1), which sets out the steps a furnisher must take after it receives notice of a consumer's dispute from a CRA. In particular, Perry alleges that Toyota failed to conduct an investigation of the information he disputed with the CRAs and to review all relevant information provided by the CRAs. Perry acknowledges Toyota's assertion that to make out his claims against it, he must show that Toyota's reporting is inaccurate. He first claims that the reporting is inaccurate because it shows his Toyota account as due and owing, with a past-due balance, and without reference to the account being included in bankruptcy, in contravention of his assertion that the account was included in his bankruptcy discharge. In its Motion to Dismiss, Toyota counters that its reporting was accurate, and thus Perry's claims fail. Like Experian, Toyota argues that it accurately reported to the CRAs that Perry's account was due and owing because the lease assumption agreement was not included in Perry's bankruptcy discharge. In the alternative, Toyota argues that the court need not address this issue because

it is a legal question that Toyota is not obligated to resolve, and thus its reporting was not inaccurate.

The FCRA requires creditors who furnish information to CRAs to report accurate information. *See* 15 U.S.C. § 1681-2(a). When a furnisher receives notice from a CRA that a consumer has disputed information in his or her report, FCRA § 1681s-2(b)(1) requires the furnisher to conduct a reasonable investigation of its records to determine whether the disputed information can be verified. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). When conducting the investigation, furnishers must determine "whether the information that they previously reported to a CRA is '*incomplete* or inaccurate.'" *Saunders*, 526 F.3d at 148 (quoting 15 U.S.C. § 1681s-2(b)(1)(D)). "In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Id.*

Like § 1681i, § 1681s-2(b)(1)'s requirement that furnishers investigate disputes does not on its face require an actual inaccuracy in a furnisher's reporting, but a number of courts have found that plaintiffs must show furnishing of inaccurate information to state a claim under § 1681s-2(b)(1). *See Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37–38 (1st Cir. 2010); *Kelly v. SunTrust Bank*, Civil Action No. 3:14-CV-121, 2016 WL 775781, at * 4 (E.D. Va. Feb. 25,

2016); *cf. Saunders*, 526 F.3d at 149–50 (assessing whether a reasonable jury could conclude that the furnisher's failure to report a consumer's dispute made the reporting inaccurate or incomplete before affirming the district court's denial of the furnisher's summary judgment motion). Thus, plaintiffs bringing a § 1681s-2(b)(1) claim must show that (1) the furnisher provided inaccurate information, and (2) after the furnisher received notification of a consumer dispute from a CRA, it failed to conduct a reasonable investigation of its records to determine whether the information previously provided was incomplete or inaccurate.

Whether a furnisher's investigation of its records is reasonable is shaped by the nature and specificity of the information provided to it by the CRA. *See Johnson*, 357 F.3d at 431. In *Johnson*, the Fourth Circuit held that when the CRA provided information explaining that the consumer was disputing her status as a co-obligor on her husband's debt, the furnisher's investigation was unreasonable when it only electronically confirmed the consumer's name and address. The court also held that a jury could conclude that the furnisher's practice of never consulting underlying documents, such as account applications, was unreasonable.

A number of courts have found that in § 1681s-2(b)(1) actions against furnishers, like in actions against CRAs, a plaintiff's allegations of inaccurate reporting must dispute facts underlying the reporting rather than present legal defenses to paying the debt at issue. *See Chiang*, 595 F.3d at 38; *see also Alston v.*

*Wells Fargo Home Mortg.*, Civil Action No. TDC-13-3147, 2016 WL 816733, at *
9–10 (D. Md. Feb. 26, 2016) ("Wells Fargo was faced with the legal question
whether Alston's cashier's check containing Alston's confusing and misleading
annotations was a legally valid payment . . . . This provisional determination
cannot be deemed patently incorrect because it is not a factual question, but a legal
one."); *Dauster v. Household Credit Servs., Inc.*, 396 F. Supp. 2d 663, 664 (E.D.
Va. 2005) (granting the furnisher's motion for judgment on the pleadings because
the plaintiff "attempt[ed] to collaterally attack the basis of accurately reported
information" when she argued that she had ceased to owe the debt at issue because
the product it financed was materially defective).

Perry's allegation that Toyota inaccurately furnished information when it
stated that his account is due and owing, with a past-due balance fails for the same
reasons as his similar allegations against Experian. Again, his claims present a
legal defense to payment rather than disputes of facts underlying the information
furnished. Although, as the Fourth Circuit noted in *Saunders*, concerns about
collateral attacks on the underlying debt are not present in actions against
furnishers because they are the creditor on the debt, it is still true that the FCRA is
not meant as a route for debtors to challenge the legal validity of their debts, even
against their creditors. Moreover, the proper resolution of a legal challenge to a
debt is likely not the kind of error that a furnisher could discover when following

the FCRA's requirement that it review all information provided by the CRA during its investigation of the dispute. *See* 15 U.S.C. § 1681s-2(b)(1)(B). This is not likely the kind of inaccuracy that information from a CRA could resolve. Accordingly, Perry's contention that Toyota inaccurately furnished information stating that his account was due and owing, with a past-due balance fails to state a claim under FCRA § 1681s-2(b).

Perry also argues that even if the Toyota account was not included in the bankruptcy discharge, Toyota's furnishing is still inaccurate because it does not show that the Toyota account was "included in bankruptcy," and because it reported the account as reaffirmed to Trans Union and Equifax. Toyota counters that "included in bankruptcy" is a purely legal conclusion and thus is not an inaccuracy sufficient to state a claim. Toyota also argues that its reporting of the account as reaffirmed rather than assumed does not give rise to an injury-in-fact for constitutional standing purposes. Citing the Supreme Court's finding in *Spokeo, Inc. v. Robins* — that "not all inaccuracies cause harm or present any material risk of harm," 136 S.Ct. 1540, 1550 (2016) — Toyota asserts that Perry cannot demonstrate harm because it would have treated the account as due and owing under either designation.

Perry's contention that Toyota furnished inaccurate information when it did not state that the account was "included in bankruptcy" fails for the same reasons

as this allegation against Experian.  The information Toyota furnished is not patently inaccurate or misleading without this statement.

Nevertheless, I do find that Perry has alleged harm sufficient to state an injury-in-fact with respect to Toyota's inaccurate reporting of the account as reaffirmed.  First, reporting an account as reaffirmed when it is not may carry more risk of harm than the example of an inaccuracy that would not cause harm provided in *Spokeo* — reporting of an incorrect zip code.  It may also carry more risk of harm than the inaccuracy that the Fourth Circuit found did not give rise to an injury-in-fact in *Dreher v. Experian Information Solutions, Inc.* — reporting the incorrect credit card company as the source of the information in the consumer's credit report.  *See* 856 F.3d 337 (4th Cir. 2017).  Further, Perry has alleged that, among other things, he has been denied credit on multiple occasions due to the reporting of the Toyota account, exactly the type of harm Congress sought to prevent in enacting the FCRA.  *See id.* at 347.

Lastly, Perry also alleges facts making it plausible that Toyota did not conduct a reasonable investigation of his dispute regarding its reporting of his account as reaffirmed.  He alleges that Toyota, like the furnisher in *Johnson*, failed to consult underlying documents to discover that Perry had not reaffirmed the debt.  Accordingly, Perry's allegations regarding Toyota's reporting of the account as

reaffirmed allege an inaccuracy and a failure to reasonably investigate sufficient to state a claim under § 1681s-2(b)(1)(B) at the motion to dismiss stage.

III.

For the foregoing reasons, it is **ORDERED** that the Motion to Dismiss of Defendant Experian Information Solutions, Inc., ECF No. 25, is GRANTED and the claims against it are DISMISSED, and the Motion to Dismiss of Defendant Toyota Motor Credit Corporation, ECF No. 24, is GRANTED IN PART and DENIED IN PART, as follows:

1. Perry's claim alleging that Toyota inaccurately furnished information stating that his account was due and owing, with a past-due balance is DISMISSED;

2. Perry's claim alleging that Toyota inaccurately furnished information when it did not state that his account had been "included in bankruptcy" is DISMISSED; and

3. The Motion to Dismiss is DENIED as to Perry's allegation that Toyota inaccurately furnished information stating that his account had been reaffirmed.

ENTER:  January 25, 2019

/s/  *James P. Jones*
United States District Judge